IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| M-I LLC,<br><br>   Plaintiff,<br>v.<br><br>FPUSA, LLC,<br><br>   Defendant. | CIVIL ACTION NO. 5-15-CV-00406 (DAE)<br><br>*Jury Trial Requested* |

### DECLARATION OF CALVIN CARTER
### IN SUPPORT OF PLAINTIFF M-I LLC's
### MOTION FOR PRELIMINARY INJUNCTION

I, Calvin Carter, declare as follows:

  1.  I am a Business Development Manager at M-I LLC ("M-I") since August 2013. In my role as Business Development Manager, I currently supervise M-I's SCREEN PULSE Fluid and Cuttings Separator Product and previously supervised M-I's MAXIMIZER product since August 2013. I submit this declaration in support of M-I LLC's ("M-I") Motion for Preliminary Injunction.

  2.  Unless indicated otherwise, I have personal knowledge of the facts contained in this declaration and, if called upon to do so, I could and would testify competently to the matters set forth therein.

  3.  I am familiar with M-I's MAXIMIZER product. This product used a welded steel tray obtained from FPUSA, LLC ("FP") in combination with M-I's equipment and was offered as an add-on service for drilling operators for their shale shakers located on rig sites.

4.   I am also familiar with M-I's recently commercialized SCREEN PULSE system. Unlike FP, SCREEN PULSE uses a light-weight carbon fiber pan that is not welded.

5.   By offering MAXIMIZER and now SCREEN PULSE, M-I has the visibility on the rig site to offer and obtain other revenue, e.g., selling of replacement shaker screens, centrifuge services, additional drilling fluid, and even the sale of M-I's shale shakers and additional charges for field personnel.

6.   I understand that FP has marketed in the United States its Canadian Vac-Screen system, which uses the same steel tray provided for M-I's MAXIMIZER system, in competition with M-I's former MAXIMIZER system and M-I's recently introduced SCREEN PULSE system.

7.   FP's trays are heavy, solid steel, welded trays. M-I experienced high failure rates with the FP's steel trays from, for example, failed weld joints and metal fatigue. As the system was rented to customers under M-I's brand and using M-I service personnel, many customers were not aware of the fact that it was FP's trays causing failures rather than components manufactured or supplied by M-I.

8.   To my knowledge, FP and M-I are the only companies in the United States to offer technology similar to M-I's patents.

9.   Based upon my experience managing this technology, any future failures of FP's system will be perceived as failures of the patented technology. This would harm the industry's perception of M-I's patented technology.

10.   The presence of FP's Vac-Screen system is resulting in loss of business to M-I, as there are only two companies known providing this patented technology. Any rig in which FP uses this technology is a rig in which M-I could use the technology. These losses include a loss

of market share and market opportunities in the areas of the United States where I understand that FP had previously operated only under M-I's brands. Moreover, in the oilfield once prices are forced to be reduced, it is difficult or impossible to re-raise them without suffering customer disapproval and loss of reputation.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 21ST day of May, 2015.

*/s/ Calvin Carter*
Calvin Carter, Business Development Manager,
M-I LLC