UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| M-I LLC, | § | No. SA:15–CV–406–DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| FPUSA, LLC, | § | |
| | § | |
| Defendant. | § | |

ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION

Before the Court is an Emergency Motion for Reconsideration of
Order Granting Plaintiff's Motion for Preliminary Injunction filed by Defendant
FPUSA, LLC ("Defendant").  (Dkt. # 35.)  Pursuant to Local Rule CV-7(h), the
Court finds this matter suitable for disposition without a hearing.  After reviewing
the Motion and the supporting and opposing memoranda, the Court **DENIES**
Defendant's Motion for Reconsideration.  (Dkt. # 35.)

BACKGROUND

Because the parties are familiar with the facts underlying this dispute,
and because the Court's Order Granting Plaintiff's Motion for Preliminary
Injunction (Dkt. # 31) includes a detailed recitation of those facts, the Court will
not repeat them here.  On May 21, 2015, Plaintiff M-I LLC ("Plaintiff") filed a
Motion for Preliminary Injunction, asking the Court to enjoin Defendant from

1

infringing its patent (the "'288 Patent") relating to oil drilling fluid recovery shaker systems.  (Dkt. # 8.)  On June 24, 2015, after hearing oral argument on the matter, the Court entered an Order Granting Plaintiff's Motion for Preliminary Injunction. (Dkt. # 31.)  The next day, the Court ordered the parties to submit supplemental briefing of no more than five pages regarding the amount of bond to be posted by Plaintiff.  (Dkt. # 32.)  The parties filed their supplemental briefs on July 2, 2015 (Dkts. ## 39, 40), and each filed a response to the opposing party's supplement (Dkts. ## 42, 45).

On June 25, 2015, Defendant filed the instant Motion for Reconsideration of the Court's Order Granting Plaintiff's Motion for Preliminary Injunction (Dkt. # 35) and an Emergency Motion to Stay the Order Granting Preliminary Injunction Pending Reconsideration and, if Necessary, Pending Appeal (Dkt. # 34).  The Court granted Defendant's Motion to Stay Pending Reconsideration, but declined to grant a stay pending appeal at this time.  (Dkt. # 36).  However, the Court stated that should the Court deny Defendant's Motion for Reconsideration, Defendant could re-urge its Motion to Stay Pending Appeal, and that Plaintiff would be given an opportunity to respond.  (Id.)  On July 6, 2015, Plaintiff filed a Response in Opposition to Defendant's Motion for Reconsideration.  (Dkt. # 41.)  On July 8, 2015, Defendant filed a Reply.  (Dkt. # 43.)

<u>LEGAL STANDARD</u>

I.      <u>Motion for Reconsideration</u>

An order granting a preliminary injunction is an interlocutory order. 28 U.S.C. § 1292(a)(1).  Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, district courts may entertain motions for reconsideration on interlocutory orders.  Fed. R. Civ. P. 54(b).  "The general practice of courts in this district has been to evaluate Rule 54(b) motions to reconsider interlocutory orders under the same standards that govern Rule 59(e) motions to alter or amend a final judgment."  <u>Doss v. Morris</u>, No. SA-11-CV-166-DAE, 2013 WL 3050298, at *2 (W.D. Tex. June 17, 2013) (collecting cases).

Federal Rule of Civil Procedure 59(e) permits a litigant to challenge the correctness of a judgment.  Three rationales can support a motion to alter or amend under Rule 59(e): (1) the judgment exhibits either "a manifest error of law or fact"; (2) the litigant wishes to present newly discovered evidence; or (3) "there has been an intervening change in the controlling law."  <u>Schiller v. Physicians Res. Grp. Inc.</u>, 342 F.3d 563, 567 (5th Cir. 2003) (quoting <u>Rosenzweig v. Azurix Corp.</u>, 332 F.3d 854, 863–64 (5th Cir. 2003)).  "'Manifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'"  <u>Guy v. Crown Equip. Corp.</u>, 394 F.3d 320, 325 (5th Cir. 2004).  Accordingly, a Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories,

3

or arguments that could have been offered or raised before the entry of judgment," and instead is an "extraordinary remedy that should be used sparingly."  Templet v. HydroChem Inc., 367 F.3d 476, 479 (5th Cir. 2004).

II.     Motion for Preliminary Injunction

A patentee suing an alleged infringer for patent infringement may, for the purpose of immediately preventing further alleged infringement, move for the "extraordinary relief" of a preliminary injunction.  35 U.S.C. § 283; Titan Tire Corp. v. Case New Holland, Inc., 566 F.3d 1372, 1375 (Fed. Cir. 2009).  The purpose of a preliminary injunction is "to preserve the status quo pending a determination of the action on the merits."  Litton Sys., Inc. v. Sundstrand Corp., 750 F.2d 952, 961 (Fed. Cir. 1984).  A party seeking a preliminary injunction must establish (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of relief, (3) that the balance of equities is in its favor, and (4) that an injunction is in the public interest.  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

Because the grant of a preliminary injunction is not unique to patent law, the Federal Circuit applies the law of the regional circuit when reviewing and interpreting such decisions.  Aevoe Corp. v. AE Tech. Co., 727 F.3d 1375, 1381 (Fed. Cir. 2013).  However, "[s]ubstantive matters of patent infringement are unique to patent law, and thus the estimated likelihood of success in establishing

infringement is governed by Federal Circuit law." <u>Revision Military, Inc. v.</u> <u>Balboa Mfg. Co.</u>, 700 F.3d 524, 526 (Fed. Cir. 2012).

DISCUSSION

Defendant asks the Court to reconsider its previous Order on several grounds. First, Defendant argues that the Court erred in concluding that Plaintiff would suffer irreparable harm in the absence of an injunction. Second, Defendant contends that the Court should reconsider its findings on the balance of hardships. Third, Defendant argues that the Court's findings on Plaintiff's likelihood of success on the merits constitute manifest error. (Dkt. # 35.) The Court addresses each argument in turn below.

I.      <u>Irreparable Harm</u>

Defendant argues that the Court made three errors in determining that Plaintiff would lose market share in the absence of an injunction. Specifically, Defendant argues that (1) Plaintiff has not presented any evidence that it would lose market share absent an injunction, (2) Plaintiff failed to present any evidence that its losses could not be adequately remedied through money damages, and (3) the Court erred in concluding that there were serious questions as to Defendant's ability to pay a judgment given that it is owned by a foreign parent corporation. (Dkt. # 35 at 3.)

5

First, Defendant contends that Plaintiff has not presented any evidence supporting its position that it would lose market share, or that Plaintiff has any market share to lose.  (Id.)  However, Defendant has admitted that it operates along with Plaintiff in a two-party market.  ("Jackson Decl.," Dkt. # 22-3 ¶ 6) ("The only products that FPUSA is aware of in this market are its Vac-Screen product and M-I's Screen Pulse product.").  As the Court explained in its previous Order (Dkt. # 31), "[d]irect competition in a two-supplier market does suggest the potential for irreparable harm flowing from infringement, as 'it creates an inference that an infringing sale amounts to a lost sale for the patentee[.]'"  Wavetronix LLC v. Iteris, Inc., No. A-14-CA-970-SS, 2015 WL 300726, at *7 (W.D. Tex. Jan. 22, 2015) (quoting Robert Bosch LLC v. Pylor Mfg. Corp., 659 F.3d 1142, 1151 (Fed. Cir. 2011)).  The purpose of a preliminary injunction is to prevent future harm, not to remedy any damage Plaintiff may have suffered in its short time in the market. The fact that Plaintiff is a relatively new player in the market does not mean that Plaintiff cannot suffer harm as a result of infringement of its product.  Furthermore, the fact that the parties operate in a two-party market supports Plaintiff's position that it would lose market share because, as the Federal Circuit has noted, there is an inference that any sale of Defendant's product represents a lost sale for Plaintiff.[1]  See Robert Bosch, 659 F.3d at 1151.

---

[1] In its Reply brief, Defendant posits that Plaintiff acknowledged in its

Defendant next argues that Plaintiff failed to present any evidence that its losses could not be adequately remedied through money damages.  (Dkt. # 35 at 3.)  Plaintiff responds that lost sales also represent a loss of visibility in the market, which would result in loss of revenue from its other products, such as replacement shaker screens, centrifuge services, and additional drilling fluid.  (Dkt. # 41 at 3; "Carter Decl.," Dkt. # 8-20 ¶ 5.)  The Federal Circuit has suggested that because lost sales of "tag-along" products are difficult to quantify, such losses support a finding that monetary damages would be insufficient to compensate a patentee. Apple, Inc. v. Samsung Elec. Co., Ltd., 678 F.3d 1314, 1337 (Fed. Cir. 2012) (O'Malley, J., concurring in part and dissenting in part).

Finally, Defendant argues that the Court improperly concluded that there were serious questions as to Defendant's ability to pay a judgment given that its parent company is a Canadian corporation.  (Dkt. # 35 at 3.)  As the Court noted, the plaintiff bears the burden of producing evidence regarding the defendant's financial condition and its ability to pay a judgment, or lack thereof. Robert Bosch, 659 F.3d at 1155.  Here, Plaintiff submitted evidence that Defendant, a small subsidiary of a foreign corporation, has a "Moderate to High

---

supplemental brief regarding the appropriate amount of bond that the amount of lost sales can be quantified.  (Dkt. # 43 at 5.)  While it is true that Defendant's sales could be chalked up as losses for Plaintiff, it does not automatically follow that Plaintiff's losses could be entirely remedied by money damages for the reasons explained below.

Risk of severe financial stress." (Dkt. # 8-15.)  Furthermore, Defendant admits

that 90% of its shares are foreign-owned.  ("Russell Decl.," Dkt. # 22-4 ¶ 3.)

Again, as the Court explained in its previous Order, district courts have often found

that money damages are insufficient in cases involving foreign infringers.  (See

Dkt. # 31 at 28, collecting cases.)

Overall, the arguments raised in Defendant's Motion are substantially

identical to those raised before the Court issued the preliminary injunction.  Given

the facts and cited case law, the Court is not persuaded that it committed a manifest

error in holding that Plaintiff established that it would be irreparably harmed in the

absence of an injunction.

II.    Balance of Equities

Defendant next argues that the Court made two errors in its analysis of

the balance of equities factor when it concluded (1) the fact that Defendant may be

put out of business by an injunction is a "neutral" factor, and (2) the Court

mistakenly relied on cases involving permanent, rather than preliminary,

injunctions.  (Dkt. # 35 at 4.)  Regarding the second argument, Defendant concedes

in its Reply that it misread Bell & Howell Document Management Products Co. v.

Altek Systems, 132 F.3d 701, 708 (Fed. Cir. 1997), the case relied upon by the

Court, and that Bell & Howell is in fact a preliminary injunction case holding that

a defendant's small size "does not insulate it from the issuance of a preliminary

injunction . . . . Small parties have no special right to infringe patents simply because they are small."  (Dkt. # 43 at 6 n.3); <u>Bell & Howell</u>, 132 F.3d at 708.

As to Defendant's first argument, the Court notes that its previous Order did not hold that whether a defendant may be put out of business is a "neutral" consideration.  Rather, the Court cited recent Federal Circuit case law for the proposition that "[a] record showing that the infringer will be put out of business is <u>a factor . . . but does not control the balance of hardships factor</u>."  <u>Aria Diagnostics, Inc. v. Sequenom, Inc.</u>, 726 F.3d 1296, 1305 (Fed. Cir. 2013) (emphasis added).  After weighing the relevant concerns, the Court found that <u>on the whole</u>, the balance of equities factor was, at best, neutral.  (Dkt. # 31 at 30.)

In support of its argument that the fact that an injunction might put it out of business tips the balance of interests in its favor, Defendant cites <u>Illinois Tool Worls v. Grip-Pak, Inc.</u>, 906 F.2d 679, 683–84 (Fed. Cir. 1990).  However, the Federal Circuit in that case ultimately made no holding on this issue, concluding that "[w]hether a destructive effect on an infringer's business before trial should be given more or less weight in the balancing of hardships when a patentee shows a strong likelihood of success need not be discussed here, the district court having correctly determined that [plaintiff] made no such showing."  <u>Id.</u> at 684.  The Court therefore finds no error in its holding, supported by <u>Aria</u>,

that the fact that a defendant may be put out of business does not control the balance of equities factor.

Finally, Defendant cites <u>Visto Corp. v. Sproquit Technologies, Inc.</u>, 413 F. Supp. 2d 1073, 1093 (N.D. Cal. 2006) in support of its argument that the balance of equities tips in its favor because the harm to Plaintiff in the absence of an injunction is speculative, while an injunction would certainly put Defendant out of business.  In <u>Visto</u>, the magistrate judge noted that the harms to the plaintiff "appear[ed] more theoretical or potential than actual or proven," while the parties did not dispute that an injunction "would devastate [the defendant's] business." <u>Id.</u> The magistrate judge then held that "the fact that [the plaintiff] would sustain only minimal damage if a preliminary injunction did not issue, and that [the defendant] would be put out of business . . . is a proper factor to be considered." <u>Id.</u> (internal quotation marks omitted).  The Court first notes that this case does not constitute binding precedent.  The Court also notes that the fact that the parties operate in a two-player market indicates that Plaintiff's injuries are not simply speculative—rather, as the Federal Circuit has stated, any sale of an infringing product very likely amounts to a real loss for the patentee.

Again, given the facts and binding case law, the Court is not persuaded that it committed a manifest error in holding that the balance of equities factor favors neither Plaintiff nor Defendant.  The issuance of a preliminary

injunction is proper where, after balancing the parties' respective interests, neither party has a clear advantage with respect to this factor. Hybritech Inc. v. Abbott Labs., 849 F.2d 1446, 1457–58 (Fed. Cir. 1988).

III.   Likelihood of Success on the Merits

Finally, Defendant asks the Court to reconsider four aspects of its ruling on Plaintiff's likelihood of success on the merits: (1) the Court's construction of the "first screen" limitation, (2) the Court's construction of "controlling air flow," (3) the Court's holding that Defendant's product has a "degassing chamber," and (4) the Court's ruling regarding Defendant's invalidity arguments. (Dkt. # 35 at 5–9.) The Court addresses each argument in turn.

A.   "First Screen" Construction

Defendant makes several arguments regarding the Court's construction of the "first screen" limitation, all of which were either raised before the Court issued the injunction or could have been raised prior to the Court's Order. Such arguments are inappropriate on a Rule 59(e) motion for reconsideration. Templet, 367 F.3d at 479. Nevertheless, the Court will address Defendant's arguments briefly. First, Defendant points to the same language in the '288 Patent that it repeatedly referenced in its Response to Plaintiff's Motion for Preliminary Injunction, and again insists that the terms "first screen" and "second screen" as used in the specification always denote spatial order. (Dkt. # 35 at 5–6,

11

citing Dkt. # 22, Ex. 8 at 7:21–26, 8:24–29.)  Plaintiff argues that both of these

excerpts describe specific embodiments of the patent, and cannot be read as

providing mandatory definitions applying to every embodiment covered by the

patent.  (Dkt. # 41 at 6.)

Defendant responds that "[w]hether a definition is provided 'in

connection with the description of a preferred embodiment' is irrelevant—the

definition governs."  (Dkt. # 35 at 8, quoting Edwards Lifesciences LLC v. Cook

Inc., 582 F.3d 1322, 1334 (Fed. Cir. 2009)).  In Edwards Lifesciences, the Federal

Circuit considered the definition of the word "malleable" within a patent

specification.  582 F.3d at 1334.  The court noted that "the location within the

specification in which the definition appears is irrelevant."  Id.  The court further

stated that "the specification's use of 'i.e.' signals an intent to define the word to

which is refers, 'malleable,' and that definition was not limited to the embodiment

being discussed."  Id.  Here, the language cited by Defendants does not indicate an

intent to define the word "first" in such a way that it is not limited to the

embodiment being discussed.  On the contrary, the language indicates that the

definitions of the terms "first" and "second" are limited to a particular

specification.  The relevant section of the specification states:

> For example, where separator **60** has four screens in series, sump **50A**
> may be located proximate inlet **52** under the first two screens.  Sump
> **50B** may be located proximate outlet **54B**, under the last two screens
> (where first and last corresponds to the direction of flow from inlet **52**

12

to outlet **54B**).

(Dkt. # 22, Ex. 8 at 7:21–26.)  The Court reads the word "where" to indicate that

"first" and "last" correspond to the direction of flow in this particular instance, but

that it need not always do so, distinguishing this case from Edwards Lifesciences.

   Next, Defendant argues that the word "first" should be given a

specific meaning in this context because "sequence matters and the specification so

requires."  (Dkt. # 35 at 6.)  As the Court noted in its previous Order, the Federal

Circuit has held that "[t]he use of the terms 'first' and 'second' is a common

patent-law convention to distinguish between repeated instances of an element or

limitation."  3M Innovating Props. Co. v. Avery Dennison Corp., 350 F.3d 1365,

1371 (Fed. Cir. 2003).  As such, the terms do not denote spatial location.  Free

Motion Fitness, Inc. v. Cybex Intern., Inc., 423 F.3d 1343, 1348 (Fed. Cir. 2005).

While acknowledging this precedent, Defendant contends that in this instance, the

word "first" carries a specific meaning in the specification—namely, that it

describes the screen closest to a shaker's inlet—and that consequently it should not

be given a "generic' meaning.  (Dkt. # 35 at 6.)  In support of this argument,

Defendant cites several district court opinions.  The Court again notes that these

opinions do not constitute binding precedent, but nevertheless finds that they are

distinguishable because in each case, the district court construed the terms in light

of the particular patent specification before it.[2]

Defendant also argues that the Court's construction is erroneous because it is inconsistent with Claim 16, the prior art Hensley device described in the '288 Patent, and the fact that the Patent Office issued Defendant's parent company's patent (the "'959 Patent") over the disclosure in the '288 Patent.  (Dkt. # 35 at 5–6.)  Because Defendant did not raise these arguments in its Response in Opposition to Plaintiff's Motion for Preliminary Injunction, although it could have, the arguments are inappropriately raised on a motion for reconsideration.  Without

---

[2] First, in <u>Leighton Technologies LLC v. Oberthur Card Systems, S.A.</u>, the district court held that in the context of the patent before it, it was "abundantly clear" that the terms "first," "second," and "third" denoted the relative order of steps, and noted that plaintiff's counsel admitted as much at the <u>Markman</u> hearing.  385 F. Supp. 2d 361, 382 (S.D.N.Y. 2005).  However, the court also noted that as a general matter, those terms "are commonly used to identify separate claim elements," <u>id.</u>, and in this case, for the reasons stated above, the specification does not make "abundantly clear" that the terms "first screen" and "second screen" always denote relative spatial order.

Next, in <u>Applera Corp. v. Micromass UK Ltd.</u>, the plaintiff disclaimed its construction of the terms "first" and "second" as identifiers of separate elements in the course of patent prosecution.  186 F. Supp. 2d 487, 507 (D. Del. 2002).  Despite this disclaimer, the court looked to the patent specification to conclude that in the context of that particular specification, "first" and "second" denoted relative, rather than absolute, order.  <u>Id.</u> at 507–08.

Third, in <u>Keurig, Inc. v. Kraft Foods Global, Inc.</u>, the district court construed the terms "first and second chambers" to denote sequential order.  No. 07-017(GMS), 2008 WL 5727542, at *1 (D. Del. Jan. 23, 2008).  However, as Plaintiff points out, this case is distinguishable on the grounds that the device in question only contained two chambers.  <u>Id.</u> at *1 n.1.

Finally, in <u>Exmark Manufacturing Co. Inc. v. Briggs & Stratton Power Products Group, LLC</u>, the parties agreed to the construction of the term "first flow control baffle" prior to the <u>Markman</u> hearing.  No. 8:10CV187, 2011 WL 5976264, at *4 (D. Neb. Nov. 29, 2011).

stating an opinion as to the merits of Defendant's new arguments, the Court does not address them here.  For the reasons explained above, the Court is unpersuaded that its original construction of the term "first screen" represents a manifest error amounting to a complete disregard of the controlling law.

      B.    <u>"Controlling Air Flow" Construction</u>

      Defendant next asks the Court to reconsider its construction of the phrase "controlling air flow" for two reasons.  First, Defendant argues that the language in the specification the Court relied upon in its analysis cannot cover a continuous vacuum, because that is distinguished as prior art.  Relatedly, the '288 Patent discusses the use of a continuous vacuum as a disadvantage of prior art that the '288 Patent attempted to solve.  Second, Defendant argues that the Court's construction renders Claim 1 invalid, because the passage cited by the Court is part of new matter added to the specification in 2013.  Defendant argues that Claim 1 is consequently not entitled to the earlier priority date needed to preserve its validity. (Dkt. # 35 at 7.)

      Defendant first argues that "controlling air flow" cannot include the application of a continuous vacuum, because that is a disadvantage of prior art discussed by the '288 Patent.  (Id.)  The Federal Circuit has held that claims should be construed to exclude features described in the patent specification as disadvantages of prior art.  <u>SciMed Life Sys., Inc. v. Advanced Cardiovascular</u>

Sys., Inc., 242 F.3d 1337, 1342–43 (Fed. Cir. 2001).  In its discussion of prior art and the problem which the new invention attempts so solve, the '288 Patent states that "applying a continuous vacuum beneath a screen to draw fluid through the screen may result in solids sticking to the screen, hindering the conveyance of solids off the end of the shaker as needed."  (Dkt. # 22, Ex. 8 at 3:37–41.)  The Court construed the phrase "controlling air flow" to mean "applying an effective amount of vacuum."  (Dkt. # 31 at 18.)  The Court did not hold that an "effective amount of vacuum" always means a "continuous vacuum": the "effective amount of vacuum" could cover a wide range of vacuum levels and patterns.

Defendant also argues that the passage cited by the Court to support its construction of this limitation is part of the new matter added to the '288 Patent specification in 2013, and that Claim 1 is thus not entitled to the earlier priority date needed to preserve its validity.  (Dkt. # 35 at 7.)  However, as the Court held in its previous Order, the 2006 application upon which Plaintiffs rely to establish the earlier priority date supports the "controlling air flow" limitation with language that clearly anticipates manipulating or controlling the air ("vapor space") below screens in the shaker, as claimed in the '288 Patent.  (See Dkt. # 31 at 24.)[3]  For these reasons, the Court does not find that its construction of "controlling air flow" amounts to manifest error.

---

[3] Defendant also asks the Court to reconsider all of its holdings regarding validity. The Court does so in detail below in Section III.D.

C.    "Degassing Chamber"

Defendant also asks the Court to reconsider its finding that the Vac-Screen system utilizes a "degassing chamber."  (Dkt. # 35 at 7.)  Defendant maintains that (1) the limitation in the '288 Patent requires collecting all of the air or vapor from the drilling fluid, and simply removing "residual" air or gas is insufficient; (2) there is no evidence that Defendant is actually practicing the degassing disclosure in the '959 Patent; and (3) the Court erroneously relied on language referring to a vacuum line fluid or air separator.  (Dkt. # 35 at 7–8.)

The "degassing chamber" limitation of Claim 16 provides for a "degassing chamber in fluid connection with the pressure differential generator and the [sump] and located external to the shaker for collecting all of the air or vapor and the drilling fluid in the sump and removing air or vapor from the drilling fluid."  (Dkt. # 22, Ex. 8 at 12:59–65).  The degassing chamber thus collects all of the air or vapor along with the drilling fluid, and removes the air or vapor from the drilling fluid.  The Court is unpersuaded by Defendant's first argument—the word "residual" in the Court's previous Order was not intended to denote any particular amount of air or vapor that must be removed in the degassing process.

In holding that the Vac-Screen system contains a degassing chamber, the Court relied in part on the '959 Patent, which describes two "accumulator tanks" providing "fluid/gas separation."  (Dkt. # 22, Ex. 10, 8:61–64.)  Defendant

17

argues that there is no evidence that it actually performs this disclosure. (Dkt. # 35 at 7.) However, Defendant has submitted a declaration stating that the '959 Patent covers the Vac-Screen system, ("Bruce Decl.," Dkt. # 22, Ex. 2 at ¶ 4), and that four of the claims in the '959 Patent require a fluid/gas separation system (Dkt. # 43 at 13 n.7). Furthermore, as the Court stated in its previous Order, Defendant's Technology Evaluation Report of the Vac-Screen system stated that "[a]ttached to the manifold is a vacuum line with a fluid or air separator." (Dkt. # 24, Ex. S at 6.) Defendant argues that this vacuum line cannot be a degassing "chamber." (Dkt. # 43 at 13–14.)

Defendant points out that the Technology Evaluation Report describes a "vacuum line with a fluid or air separator, which is connected to the vacuum collection tank." (Dkt. # 24, Ex. S at 6.) Defendant contends that this language shows that the vacuum line which performs the fluid or air separation is separate from the "vacuum collection tank." Plaintiff contends that this entire system performs a degassing function and constitutes a "degassing chamber." (Dkt. # 41 at 10.) The Court finds that the "degassing chamber in fluid connection with the pressure differential generator and the [sump] . . . for collecting all of the air or vapor and the drilling fluid . . . and removing air or vapor from the drilling fluid" described in the '288 Patent performs the same function as the "vacuum line with a fluid or air separator, which is connected to the vacuum collection tank" in the

Vac-Screen system.  The Court thus finds that its findings regarding the degassing chamber do not constitute manifest error.

     D.    <u>Invalidity</u>

        Finally, Defendant asks the Court to reconsider its holdings regarding the arguments Defendant made about the validity of the '288 Patent.  (Dkt. # 35 at 8–9.)  Defendant presents three arguments regarding invalidity.  First, Defendant argues that the limitation "controlling air flow <u>under at least a portion of the first screen</u>" of Claim 1 is not supported by the 2006 application, which Plaintiff relies on to establish the earlier priority date.  (<u>Id.</u> at 8.)  The Court's previous Order found that this limitation was supported by paragraph 27 of the 2006 application, which provided that a pressure differential device may be provided to create a pressure differential in the vapor space between screens.  (Dkt. # 31 at 24.)  Defendant argues that the Court failed to address the second part of the limitation—that the air flow is controlled under at least a portion of the first screen—and contends that the 2006 application does not describe limiting the vacuum to a portion of the screen as opposed to an entire screen or screens.  (Dkt. # 35 at 8.)  However, the words "at least" in the '288 Patent indicate that a pressure differential may be applied under the entire screen.  "At least" establishes a base requirement; it does not preclude applying pressure under an entire screen or screens.

Second, Defendant argues that the Court erroneously disregarded the significance of a more narrowly-defined "first screen" in Claim 16.  Claim 16 describes a first screen which has "an upper side and a lower side for separating drill cuttings and drilling fluid within a shaker."  Defendant contends that all terms in a claim must be given effect, but that the 2006 application does not provide an explanation as to what the newly-added limitation means or does.  (Dkt. # 35 at 8–9.)  Finally, Defendant argues that Plaintiff admitted to the Canadian patent office that the '288 Patent is a continuation-in-part.  (Id. at 9.)  Defendant did not raise either of these arguments in its Response to Plaintiff's Motion for Preliminary Injunction.  (See Dkt. # 22 at 16.)  Again, a Rule 59(e) motion "cannot raise issues that could, and should, have been made before the judgment issued."  United Nat'l Ins. Co. v. Mundell Terminal Servs. Inc., 740 F.3d 1022, 1031 (5th Cir. 2014) (citing Advocare Int'l LP v. Horizon Labs., Inc., 524 F.3d 678, 691 (5th Cir. 2008)).  The Court does not express an opinion as to the merits of these arguments, and cannot properly consider them now.  For the above reasons, the Court does not find that its findings regarding the validity of the '288 Patent constitute manifest error.

<u>CONCLUSION</u>

For the reasons stated above, the Court **DENIES** Defendant's Motion for Reconsideration.  (Dkt. # 35.)  The Court will address the amount of bond to be posted by Plaintiff and the specific activities enjoined in a separate order.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, July 21, 2015.

_____

David Alan Ezra
Senior United States Distict Judge